NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

9th Circuit Court–Nashua Family Division
No. 2014-493

IN THE MATTER OF GLENDA J. BALL AND FRANK A. BALL

Argued: May 13, 2015
Opinion Issued: August 20, 2015

Glenda J. Ball, self-represented party, by brief and orally.

Gawryl MacAllister & O'Connor, of Nashua (Jared O'Connor on the brief and orally), for the respondent.

CONBOY, J. The respondent, Frank A. Ball, appeals an order of the 9th Circuit Court – Nashua Family Division (Ryan, J.) denying his motion to terminate his obligation to support the parties' eldest child because she had turned 18 and had graduated from high school. We reverse and remand.

I. Background

The pertinent facts are as follows. The respondent and the petitioner, Glenda J. Ball, were married in 1994 and separated in 2004. They have three children: a daughter born in 1995, a son born in 1997, and another son born in 1999.

In July 2005, the parties entered into a separation agreement in Massachusetts requiring the respondent to pay the petitioner $519 in weekly

child support until the "emancipation" of the parties' children. The agreement's definition of "emancipation," consistent with Massachusetts law, required child support to continue after a child had attained the age of 18 or had graduated from high school provided that certain conditions were met. See Mass. Gen. Laws Ann. ch. 208, § 28 (West 2007) (amended 2011). Under the agreement, the respondent was obligated to pay support for a child until the child reached age 23 if the child was "attending a post-secondary accredited educational training school or a two-year or four-year accredited college program as a full-time student" and was "domiciled in the home of a parent and . . . principally dependent upon said parent for maintenance due to enrollment in the educational program." See id. The parties agreed that their agreement would "be construed and governed" by Massachusetts law and that it would be incorporated and merged with their divorce decree. As they requested, the parties' Massachusetts divorce decree incorporated their separation agreement.

According to the respondent and not disputed by the petitioner, the parties and their children relocated from Massachusetts to New Hampshire in 2008. In the fall of 2008, the parties' Massachusetts divorce decree was registered in New Hampshire. See RSA 546-B:47 (2007) (repealed and reenacted 2015). At that time, the parties requested the New Hampshire court to approve a partial stipulation purporting to modify their Massachusetts decree. In their 2008 partial stipulation, the parties agreed that the definition of "emancipation" contained in their Massachusetts decree was thereby "stricken" and that New Hampshire law would apply. The parties also agreed that the respondent's child support obligation would "be payable in accordance with New Hampshire law . . . until the parties' youngest child reaches the age of 18 or graduates from high school whichever is later." See RSA 461-A:14, IV (Supp. 2014). The court approved the stipulation and ordered the respondent to pay $516 in weekly child support. In December 2008, it increased the weekly child support amount to $559.

In 2013, the respondent filed a petition to modify his child support obligations, alleging that, because the parties' daughter was 18 and had graduated from high school, his obligation to support her should be terminated. The petitioner objected, asserting that the Massachusetts decree required the respondent to continue supporting the parties' daughter because she was "pursuing post-secondary education in an accredited college program as a full time student," was "domiciled in [the petitioner's] home," and was "principally dependent upon [the petitioner] for her maintenance due to her enrollment in college." See Mass. Gen. Laws Ann. ch. 208, § 28. Although the petitioner acknowledged that the parties had entered into the 2008 partial stipulation, which had been approved by the New Hampshire court, she argued that the court had "lacked jurisdiction and authority to modify the Massachusetts Order regarding the duration that [the respondent] had to pay child support." Relying upon the Uniform Interstate Family Support Act

2

(UIFSA), see RSA ch. 546-B (2007) (repealed and reenacted 2015), the trial court agreed with the petitioner and denied the respondent's motion to modify. The respondent unsuccessfully moved for reconsideration, and this appeal followed.

## II.  Analysis

### A.  Standard of Review

Resolving the issues in this appeal requires us to interpret UIFSA. Although the respondent argues that UIFSA does not apply to this case, we disagree.  UIFSA applies because Massachusetts issued a child support order in 2005, and UIFSA governs the jurisdiction of New Hampshire courts to enforce or modify that order.  See RSA 546-B:39-:46 (enforcing order), :47-:52 (modifying order).  Our review of the trial court's interpretation of UIFSA is de novo.  See In the Matter of Yaman & Yaman, 167 N.H. 82, 86 (2014).

"UIFSA is a model act adopted by the National Conference of Commissioners on Uniform State Laws at the behest of Congress . . . ."  In the Matter of Scott & Pierce, 160 N.H. 354, 358 (2010) (quotation omitted).  UIFSA has been enacted in all 50 states and the District of Columbia.  Id. at 359. New Hampshire first enacted UIFSA in 1997, effective January 1, 1998.  See Laws 1997, 263:32.  Since then, the National Conference of Commissioners on Uniform State Laws has amended UIFSA twice, once in 2001, and again in 2008.  Scott & Pierce, 160 N.H. at 359.  In 2015, New Hampshire repealed the 1996 version of UIFSA and enacted the 2008 version, which included the 2001 amendments thereto.  See Laws 2015, ch. 75.  The 2015 amendments to New Hampshire's version of UIFSA will become effective on January 1, 2016.  See id.

To interpret UIFSA, we rely upon our ordinary rules of statutory construction.  Scott & Pierce, 160 N.H. at 359.  Under those rules, we are the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole.  Id.  We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning.  Id.  We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result.  Id.

We also rely upon the official comments to UIFSA.  Id.  When interpreting a uniform law, such as UIFSA, "the intention of the drafters of a uniform act becomes the legislative intent upon enactment."  Hennepin County v. Hill, 777 N.W.2d 252, 256 (Minn. Ct. App. 2010) (quotation and brackets omitted).  In addition, we have considered later amendments to UIFSA when "they provide insight into the intended meaning of New Hampshire's existing statute."  Scott & Pierce, 160 N.H. at 361.  Further, we consider the interpretation of UIFSA by other jurisdictions.  See Hill, 777 N.W.2d at 256-57.  The opinions from courts

in other jurisdictions are relevant "because uniform laws should be interpreted to effect their general purpose to make uniform the laws of those states that enact them." Id. at 257 (quotation omitted); see RSA 546-B:56 (providing that RSA chapter 546-B "shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states enacting it").

### B. UIFSA in General

UIFSA applies when more than one state is involved in child support proceedings. Scott & Pierce, 160 N.H. at 359. It consists of nine articles that supply procedural and jurisdictional rules for three types of child support proceedings: (1) proceedings to establish a child support order in the first instance when there is no prior child support order; (2) proceedings to enforce another state's existing child support order; and (3) proceedings to modify an existing child support order issued by another state. See id. at 360; see also RSA 546-B:31-:38 (Articles 4 and 5 – establishing order), :39-:46 (Article 6 – enforcing order), :47-:52 (Article 6 – modifying order). In this case, we are concerned with Article 6 of UIFSA, which applies to modification of child support orders issued by another jurisdiction. See RSA 546-B:47-:52.

The purpose of UIFSA is to avoid conflicting child support orders issued by courts in different states. See Wills v. Wills, 745 N.W.2d 924, 926-27 (Neb. Ct. App. 2008). UIFSA relies upon the concept of "continuing, exclusive jurisdiction" to ensure that only one child support order will be in effect at any given time. See LeTellier v. LeTellier, 40 S.W.3d 490, 493 (Tenn. 2001). A state that issues a support order has continuing, exclusive jurisdiction over it, and "[n]o other state may modify that order" as long as the issuing state retains continuing, exclusive jurisdiction over it. Id.

Section 205 of UIFSA, codified in New Hampshire as RSA 546-B:7, sets forth the circumstances under which the issuing jurisdiction retains and loses its continuing, exclusive jurisdiction to modify its own support order. See Lunceford v. Lunceford, 204 S.W.3d 699, 702-03 (Mo. Ct. App. 2006). Under that provision, "[a]s long as one of the individual parties or the child continues to reside in the issuing state, and as long as the parties do not agree to the contrary, the issuing tribunal has continuing, exclusive jurisdiction over its order – which in practical terms means that it may modify its order." Unif. Interstate Family Support Act § 205 cmt. (amended 1996), 9 Part IB U.L.A. 340 (2005); see RSA 546-B:7. By the same token, "if all the relevant persons – the obligor, the individual obligee, and the child – have permanently left the issuing state, the issuing state no longer has an appropriate nexus with the parties or child to justify exercise of jurisdiction to modify." Unif. Interstate Family Support Act § 205 cmt. (amended 1996), 9 Part IB U.L.A. 340. "Although the issuing state loses jurisdiction to modify the child support order if all the parties leave the state, until the order is modified by another state in

4

accordance with UIFSA, the issuing state's order remains in effect not only in the issuing state but also in any state in which the order has been registered." Lunceford, 204 S.W.3d at 703; see id. at 704 (citing cases).

However, Section 205 of UIFSA "does not confer jurisdiction to modify on another tribunal." Unif. Interstate Family Support Act § 205 cmt. (amended 1996), 9 Part IB U.L.A. 341. Sections 611(a) and 613 of UIFSA govern when a state obtains continuing, exclusive jurisdiction to modify the child support order issued by another state. See Unif. Interstate Family Support Act § 611 cmt. (amended 1996), 9 Part IB U.L.A. 444-45. In New Hampshire, Section 611(a) is codified as RSA 546-B:49, I, and Section 613 is codified as RSA 546-B:51.

Section 611(a)(1) of UIFSA provides that one state may modify a child support order issued by another state when the original support order is registered in the new state and the new state finds that: (1) the child, the obligee, and the obligor no longer reside in the state that issued the original order; (2) the petitioner seeking modification is not a resident of the new state; and (3) the respondent is subject to personal jurisdiction in the new state. Unif. Interstate Family Support Act § 611(a)(1) (amended 1996), 9 Part IB U.L.A. 442; see RSA 546-B:49, I(a); see also Scott & Pierce, 160 N.H. at 360.

"There are two exceptions to the rule of [Section 611(a)(1)] requiring the petitioner to be a nonresident of the forum in which modification is sought." Unif. Interstate Family Support Act § 611 cmt. (amended 1996), 9 Part IB U.L.A. 445. "First, under [Section 611(a)(2)] the parties may agree that a particular forum may serve to modify the order." Id.; see RSA 546-B:49, I(b) (providing that the parties may file written consents in the original jurisdiction to allow a new state to modify the support order). "Second, Section 613 . . . applies if all parties have left the original issuing state and now reside in the same new forum state." Unif. Interstate Family Support Act § 611 cmt. (amended 1996), 9 Part IB U.L.A. 445; see RSA 546-B:51.

Once a new tribunal modifies the child support order, that tribunal "becomes the tribunal of continuing, exclusive jurisdiction." RSA 546-B:49, IV; see Unif. Interstate Family Support Act § 611(d) (amended 1996), 9 Part IB U.L.A. 443. "The order of the modifying tribunal becomes the operative 'controlling order' and the modifying tribunal assumes continuing, exclusive jurisdiction over the only operative child support order." Unif. Interstate Family Support Act § 611 cmt. (amended 1996), 9 Part IB U.L.A. 444; see Scott & Pierce, 160 N.H. at 360.

C. Parties' Arguments

The parties dispute whether the trial court had subject matter jurisdiction in 2008 to change the duration of the respondent's child support

obligation from that set forth in the Massachusetts support order.  The petitioner argues that the trial court lacked jurisdiction to shorten the duration because doing so would not have been allowed under Massachusetts law.  See RSA 546-B:49, III; see also Unif. Interstate Family Support Act § 611(d) (amended 2001), 9 Part IB U.L.A. 255 (providing that, "[i]n a proceeding to modify a child-support order, the law of the State that is determined to have issued the initial controlling order governs the duration of the obligation of support").  The petitioner, however, conflates subject matter jurisdiction with choice of law.  As explained below, we conclude that the trial court had subject matter jurisdiction to adjudicate the parties' petition to modify their Massachusetts support order.

"Subject matter jurisdiction is jurisdiction over the nature of the case and the type of relief sought; the extent to which a court can rule on the conduct of persons or the status of things."  Hemenway v. Hemenway, 159 N.H. 680, 683 (2010) (quotation and brackets omitted).  Subject matter jurisdiction constitutes "a tribunal's authority to adjudicate the type of controversy involved in the action."  Id. (quotation omitted).  "Absent subject matter jurisdiction, a court order is void."  Id. at 684.  "A party may challenge subject matter jurisdiction at any time during the proceeding, including on appeal, and may not waive it."  Id. (quotation omitted).  "A court lacks power to hear or determine a case concerning subject matters over which it has no jurisdiction."  In the Matter of Muller & Muller, 164 N.H. 512, 516-17 (2013) (quotation omitted).  We review, de novo, whether the trial court in this case had subject matter jurisdiction.  See id. at 517.

"The family division is a court of limited jurisdiction, with exclusive power conferred by statute to decide cases in certain discrete areas," including child support.  Id. (quotation omitted); see RSA 490-D:2, I, II (2010).  Because the powers and jurisdiction of the family division are limited to those conferred by statute, we look to the relevant statutes to determine whether the family division had subject matter jurisdiction in this case to change the duration of the respondent's child support obligation from that set forth in the Massachusetts order.  See Muller, 164 N.H. at 517.

The trial court in this case had subject matter jurisdiction under Section 613 of UIFSA, codified in New Hampshire as RSA 546-B:51, to rule upon the parties' request for modification.  RSA 546-B:51, I, provides:  "If all of the parties who are individuals reside in this state and the child does not reside in the issuing state, a tribunal of this state has jurisdiction to enforce and to modify the issuing state's child support order in a proceeding to register that order."  Under this provision, New Hampshire had jurisdiction in 2008 to adjudicate the parties' request to modify their Massachusetts support order because "all of the parties who are individuals reside[d] in this state and the child [did] not reside in the issuing state."  RSA 546-B:51, I.

6

Nothing in the plain language of RSA 546-B:51 otherwise limits the court's subject matter jurisdiction to adjudicate a request to modify the support order issued by another state. The remaining section of RSA 546-B:51, RSA 546-B:51, II, merely provides that, when exercising jurisdiction under RSA 546-B:51, a New Hampshire court must apply certain UIFSA provisions, including Article 6, "and the procedural and substantive law of this state," and that certain other UIFSA provisions not relevant to the instant case do not apply. See RSA 546-B:51, II.

The petitioner does not dispute that RSA 546-B:51 governs this case. Nor does she dispute that the court had jurisdiction in 2008 to modify the amount of child support that the respondent was required to pay. Instead, she relies upon RSA 546-B:49, III, which provides, in pertinent part: "A tribunal of this state may not modify any aspect of a child support order that may not be modified under the law of the issuing state." The petitioner contends that, pursuant to this provision, because Massachusetts law would not shorten the duration of the respondent's child support obligation under these circumstances, the New Hampshire court lacked subject matter jurisdiction to do so. RSA 546-B:49, III is the New Hampshire version of Section 611(c) of UIFSA. See Unif. Interstate Family Support Act § 611(c) (amended 1996), 9 Part IB U.L.A. 443.

For the purpose of addressing the petitioner's argument, we assume, without deciding that RSA 546-B:49, III applies to this case. See RSA 546-B:51 (providing that Article 6, which includes RSA 546-B:49, III, applies to proceedings under RSA 546-B:51); see also Unif. Interstate Family Support Act § 613 cmt. (amended 1996), 9 Part IB U.L.A. 454 (explaining that "Section 611(c) [of UIFSA codified in New Hampshire as RSA 546-B:49, III] forbidding modification of nonmodifiable aspects of the controlling order still applies" when a proceeding is brought under Section 613 of UIFSA, codified in New Hampshire as RSA 546-B:51).

We disagree with the petitioner, however, that the trial court's alleged failure to comply with RSA 546-B:49, III deprived the trial court of subject matter jurisdiction. In this regard, we find Scott & Pierce instructive.

In that case, as in the instant case, the issuing state was Massachusetts. Scott & Pierce, 160 N.H. at 356. While in Massachusetts, the parties agreed to lengthen the duration of the husband's child support obligation, and that modification was approved by a Massachusetts court. Id. at 356-57. Thereafter, although the husband moved to New Hampshire, the wife did not. Id. She later filed a petition in New Hampshire to modify the amount of weekly child support. Id. at 357. The New Hampshire court granted the wife's petition. Id.

7

We concluded that the New Hampshire court had jurisdiction to act upon the wife's petition to modify the Massachusetts order "because the parents and their children no longer resided in Massachusetts and [the wife], who sought modification, did not reside here, although [the husband] did." Id. at 360; see RSA 546-B:49, I. We explained that, once the New Hampshire court modified the amount of weekly child support set forth in the Massachusetts order, "New Hampshire became the issuing state, assumed continuing exclusive jurisdiction over the child support order, and obtained the authority to apply its own substantive law to any provision of the child support order that could have been modified under Massachusetts law." Scott & Pierce, 160 N.H. at 360 (quotation omitted). We further explained that Massachusetts law continued to govern those aspects of the Massachusetts order that could not be modified under Massachusetts law. Id. at 360-61. Thus, RSA 546-B:49, III establishes when a New Hampshire court must follow the law of the issuing forum. It does not affect the jurisdiction of a New Hampshire court to adjudicate a request to modify a child support order issued by another state.

Accordingly, even if, as the petitioner contends, the trial court violated RSA 546-B:49, III by applying New Hampshire law to the duration of the respondent's child support obligation, such would constitute an error of law rather than a jurisdictional defect. Thus, because applying New Hampshire law to the duration of the respondent's child support obligation is not a jurisdictional defect, the trial court's 2008 order is not void for lack of subject matter jurisdiction.

Therefore, the trial court's alleged legal error in applying New Hampshire law when modifying the duration of the respondent's child support obligation could be waived. Here, regardless of whether the petitioner's challenge might be barred by res judicata (an argument the respondent does not make), we conclude that the petitioner waived the alleged error by entering into the 2008 stipulation and by not arguing in the 2008 proceedings that applying New Hampshire law to the duration of the respondent's child support obligation was error.

Because the 2008 order is not void for lack of subject matter jurisdiction, and because the petitioner waived any legal error in the 2008 order approving the parties' stipulation, the trial court erred by not extinguishing the respondent's obligation to support the parties' eldest child as required by the court's 2008 order.

Reversed and remanded.

DALIANIS, C.J., and HICKS, LYNN, and BASSETT, JJ., concurred.

8